·¦· WESLEY CHURCH v. MOORE et al.

A., being a member of an unincorporated association, at their request borrowed money, which was applied to the erection of a church for the association, and mortgaged his lands for its payment; the association agreeing with him to keep down the interest, and pay the principal when required. The society obtained a charter, and their trustees conveyed the church to the corporation. The corporation continued to pay the interest on the loan for some time, but

| 10 | 273 |
| 151 | 596 |
| 10 | 273 |
| 158 | 48 |
| 10 | 273 |
| 172 | 435 |
| 10 | 273 |
| 211 | [2]438 |
| 10 | 273 |
| 212 | [2]168 |
| 10 | 273 |
| 36 SC | [2]357 |

after the death of A. the mortgaged premises were sold, and proving insufficient to pay the debt, other lands by him devised were sold under the judgment on his bond. The devisees have a remedy in equity for reimbursement against the corporation, on the ground of constructive fraud in the corporation in not preventing the sale by paying the debt.

The extension of the remedy by actions at law, to cases originally within the jurisdiction of equity, and particularly the system adopted in Pennsylvania, of administering equitable relief through the medium of common-law forms, is no bar to the equitable jurisdiction of the courts for the same cause.

It seems that where the property of one has been sold to pay a debt which another was bound to pay, but where he was under no legal liability to the creditor, and where there was no privity between the debtor and the owner of the property, an action at law would not lie.

Where a surety takes security for his liability from a stranger, the presumption is it is cumulative, and the implied obligation of the principal to indemnify, is not waived or merged.

The statute of limitations begins to run in favour of the principal, from the time the property of the surety is sold to pay the debt.

The remedy to enforce a decree in equity against a corporation, is confined in the same manner as executions on judgments at law are by the act of 1836.

APPEAL from the Common Pleas of Philadelphia—in equity.

*April* 17. The case, as it appeared upon the pleadings and evidence, was this. Samuel Curtis and several others having united to erect a church edifice, and needing money for the purpose, the association requested Curtis to borrow $1,000 from the Benezet Society, the association or church agreeing to pay the interest, and the principal when required. Curtis borrowed the money, and gave his own bond and mortgage for it in 1820. Scott and two others, being members of the association, also gave Curtis their mortgage as an indemnity.

In 1824, Curtis died, having devised certain land to the complainants. The land on which the mortgage was given was sold by the sheriff, and the proceeds being insufficient to discharge that debt, the land devised to the complainants was sold under the judgment entered on the bond.

At the time Curtis borrowed the money, he was one of the trustees of the land on which the church was erected. In 1827, the association obtained a charter, and the surviving trustees conveyed the church and the land on which it stood to the corporation.

The plaintiffs filed their bill, setting forth these facts, and praying that the corporation of the church might be compelled to pay so much as would compensate them for the sale of their property by the sheriff. (?)

The bill also prayed a discovery, among other things, of the entries in the books of the corporation, and of receipts in their possession. These were produced, and showed the request to Curtis and

others to borrow money of the Benezet Society; that he had applied it to the purposes of the church, and that the church had paid the interest for a long time, and that it was stated on their books as a debt due by the church to the Benezet Society.

The court below decreed for the complainants.

*Zantzinger*, for the appellant.—The court has no jurisdiction unless conferred by the acts of Assembly. It is plainly not a case within the act of 1836. The act of 1840 confers jurisdiction in cases of actual fraud, accident, mistake, or account; none of these apply. Nor does the still further extended jurisdiction, under the act of 1845, include it. Beside, that was passed after the bill was filed; it has no retrospective operation: 4 S. & R. 401. But, should that act apply, here is no case of constructive fraud, within the definitions in the books: Stor. Eq. §258. It is a case between principal and surety, and equity never interferes there: Ib. 323–8, 495–9. There is no case to be found where the court compelled a principal to repay a surety the debt paid by the former. The remedy is by assumpsit, and in such cases the court does not interfere, but leaves the party to his remedy at law. The other ground is discovery. But bills of that sort are not allowed by the acts of Assembly, but in two cases; one in aid of an action pending in the same court; the other in aid of the execution after judgment recovered. But no court in this commonwealth can entertain an original bill of discovery, seeking relief in the same court. It is not necessary; for had there been an action at law, all the discovery now obtained would have been obtained equally well by a bill in aid of that action. Courts of equity will not retain a bill if the discovery be the only ground of jurisdiction, and is sought unnecessarily. 2. When the money was borrowed the corporation did not exist. When subsequently created, the members of the association remained liable. A change of the liability to that of the corporation, could only be made with their assent and that of the debtor: 2 R. 359. The mere fact of an acknowledgment by the corporation would not be sufficient, for there was no previous legal liability: Chit. on Cont. 254. 3. Curtis, having accepted a formal indemnity from three members, he and his devisees must look to that; the parol promise was merged therein: Chit. on Cont. 597.

*J. Clarke Hare*, contrà.—The money in this case was borrowed and applied to the use of a voluntary association. The building erected with this money was then conveyed to the corporation

into which the association was erected. If the corporation did not succeed to a legal liability, is there a doubt they did to an equitable, or at least the strongest moral liability, to repay the loan and to protect the borrower? They so considered it; and the payment of interest, with the recognition of the debt, affords ample evidence of their recognition of this obligation, and of an implied promise to fulfil it. It is supposed 2 R. 359 decides we have no remedy against the corporation. The case is misapprehended; it decides that we could not be turned over to that exclusively: not that we may not seek a remedy against it.

Under these circumstances, can there be a doubt that before payment we had a right in equity, to compel payment by the corporation in discharge of our liability? and can the fact that we have been compelled to pay oust the right to reimbursement?

The jurisdiction over corporations, by the act of 1836, is general, that is, all the jurisdiction which courts of chancery would exercise over corporations and others, is vested in our courts over corporations, 3 W. & S. 184, 193. In this case it might be supported by the act of 1845, for that affects the remedy and not the right: Bolton v. Johns, 3 Barr, 145; and on appeal the cause is heard *de novo*. But there is a further jurisdiction: courts of chancery have uniformly exercised control over cases of principal and surety, on the ground of accident, as presenting casualties not foreseen; fraud, as where the principal fails to perform his bounden obligation in good faith, and trust in reaching property peculiarly applicable to the relief of the surety. Pit. on Pr. & Sure. 132; Nels. 24; 1 Cox. 276; Mos. 318; 1 A. K. Marsh, 358; 3 Leig. 272; 2 Call. 125; 1 Dev. Eq. 137; 6 Paig. 521; 2 Am. Eq. Dig. Tit. *P. and Surety.* It is only where a legal obligation of a higher nature has been taken from the principal, that the equitable jurisdiction is ousted. The fact that these remedies cannot be perfectly afforded, is no reason why so much as can be done should be refused; and the familiar principle which authorizes sureties to file a bill for contribution, is strong evidence of the existence of a general jurisdiction.

There was no remedy at common law, for there was no privity in contract between these parties, nor was there any legal liability by the corporation to the creditor; hence, even a compulsory payment raises no legal liability to the person paying: 1 M. Gra. & Sc. 300. That there might be a remedy under legal forms, professing to administer equity, is immaterial; for nothing is more trite than the rule that an assumption of equitable relief by com-

mon-law courts never ousts the original jurisdiction of chancery: 5 Ves. 235; 7 Ib. 237–49; 17 John. 388. On this ground it is, that equity still gives contribution between sureties, where the debt is paid, though assumpsit may now be maintained: 4 Grat. 268; 12 Alab. 225; 5 J. J. Marsh, 270; 7 Ib. 559. Where the discovery sought goes to the foundation of the right of suit, it gives equity jurisdiction for the purposes of relief. A discovery was necessary here, to show that the liability of Curtis, on its face primary, was in reality secondary in its nature. This. argument applies in all cases between principal and surety, where the relation of suretyship does not appear in the instrument creating the debt. A discovery was also necessary in this instance, to establish the substantial identity of the present corporation with the original association, and to show that the property held in trust for the latter had been conveyed to the former, and a discovery going to the foundation of the right of suit, will give equity jurisdiction: 4 Cow. 728. There is a limit to the. powers of courts of law. The injury was not sustained here until after Curtis's death, and then no part of the estate of the executors was taken. Their damages would be nominal only: 1 Conn. 244; 12 N. H. 413; 4 Mass. 627; 1 M. & Sel. 355; 4 Ib. 53. Nor could there be any other parties to the action than his executors; for how could a devisee sue on an implied or express personal contract with his testator? In such cases, as the injury is done to the devisees, equity considers them the parties who may recover compensation: 1 Dev. Eq. 30; 8 Paige, 359; 9 Ib. 43; 6 Ib. 521. The doubt and uncertainty of the legal remedy alone will sustain the jurisdiction: 3 Pet. 215; 11 Conn. 112.

But the objection is too late after answer, unless there is a total want of it: 2 Paige, 509. The indemnity of Scott is no waiver or merger; it was a collateral security, and there can be no merger in an obligation other than of the original party: 4 W. & S. 542; 1 S. & R. 294; 11 Ib. 149; 14 John. 404; 6 T. R. 176; 3 M. & Gr. 258–66; Ib. 213.

*April* 26. GIBSON, C. J.—The proofs show that the money for which this bill is filed, was borrowed by Curtis at the instance of the congregation, and for its use; and that it was laid out by the building committee in the erection of its church. They further show that he mortgaged the property, which he devised to the complainants, as a security for the loan; and, that the congre-

2 A

gation, having kept down the interest while he lived, suffered it to be sold at the end of a few years, for the principal and unpaid interest, on a judgment obtained on the bond which accompanied the mortgage, and that being inadequate, the property devised to the complainants was sold to satisfy the debt.

It appears, also, that Curtis took, as counter-security, from some of the congregation's trustees, a mortgage of their individual property, which his executors, or the survivor of them, neglected or refused to put in suit; and one of the questions in the cause is, whether this counter-security was exclusive or cumulative. The law is, that a creditor may take as many securities as he can get, the presumption being, in the first instance, that they are cumulative; and here there is no evidence to rebut it.

Another question is, whether the corporation is bound to perform the promises of the association. Why not? At the time of the promise, the beneficial interest and dominion was in it as a *cestui que trust;* and the persons who were its trustees, merely as recipients of the legal title, were bound by its acts. Having become its own trustee by their conveyance to it as a corporation, it was bound to do whatever they were bound to do; and, having received the title to the whole property, legal as well as beneficial, it had it burthened with the equities which had before been attached to it. That the promise was originally made by a society irresponsible at law, would be an answer to an action at law, but certainly not to a bill in equity, after it had acquired a corporate existence, as a person with capacity to sue and be sued.

The statute of limitations did not begin to run till the property of the complainants had been sold; and, as the proper period had not elapsed before the filing of the bill, that point of defence also fails.

The rest involves a question of jurisdiction; and a subordinate branch of it is, whether the complainants have a remedy at law.

Had Curtis paid the money in the first instance, he might have maintained *indebitatus assumpsit* against the congregation, strictly at law, and debt against Nicholas, Weeks, and Scott, on their bond, or on a *scire facias* on their mortgage: the complainants, who are strangers to them, could have neither, and this is conclusive, that, unless they are restricted by the scantiness of the legislative grant of equity powers to the common-law courts, they are entitled to maintain this bill.

Had they, indeed, paid the money before the land was sold, they might have maintained *indebitatus assumpsit* without privity, just as a

stranger, who has paid rent to extricate his property from a distress, may maintain it against the tenant. But, it has not been ruled that the action lies for property lost, as an equivalent for money paid. In England, this bill would, consequently, be entertained without hesitation. Here an action would have formerly been maintainable, and would, perhaps, still be; but that is not a consideration to deprive a party of his election.

The remaining branch of the question depends on the extent of the equitable jurisdiction conferred on the court below by the several statutes on the subject.

The act of 1836 contains no provision explicitly applicable to the subject, but the act of 1840 gives the Supreme Court, and the Common Pleas of Philadelphia county, the jurisdiction and powers of a court of equity in cases of fraud, accident, mistake, and account; and the act of 1845 gives the same jurisdiction to the same courts, and in the same cases, whether "the fraud, accident, mistake, or account, be actual or constructive." The word constructive must be referred particularly to the word fraud; for, it is impossible to conceive that it can be referred, with propriety, to an accident, a mistake, or an account, which is actual where it is anything. What, then, is the fraud charged, and what the relief prayed by this bill?

The fraud is, in the first place, the defendants' breach of confidence, in neglecting to redeem the property pledged for their debt, as they were in conscience bound to do; and, in the second, their refusal, for defect of legal remedy, to compensate a loss which every principle of common honesty casts upon them. To leave a surety in the lurch, because there is no legal obligation resting on the principal, if not an actual fraud, is certainly, at the very least, a constructive one. I say a legal obligation, or a legal remedy against him; for the remedy, by the equitable action of assumpsit, which, in such a case, was formerly held to lie with us, and would perhaps still lie, was a clumsy and inefficient one. It was, in truth, a bill in equity in the guise of an action at law, which afforded none of the facilities for the discovery of truth which are afforded by the remedy in a different form; and that consideration alone would be sufficient to sustain the jurisdiction elsewhere. And even here, I will not say that the present case is not within the true meaning of the act of 1836, which gives "specific relief, where a recovery in damages would be an inadequate remedy." But the jurisdiction stands on a more solid foundation. It is established by the cases cited in the argument, that an extension of remedy at

law, does not supplant the relief that was to be obtained in equity. Why, then, should this tort between parties who stand in no privity to each other, be turned into a contract? Certainly not because the courts were at one time compelled by defect of remedy to do so. The equitable jurisdiction conferred by these statutes is a valuable—indeed, an indispensable one; and it ought to be extended by every interpretation of which the words are susceptible. If there is any case in which it is the part of a good judge to amplify his jurisdiction, this is that case. The property of the complainants has been sacrificed to pay the debt of another, which grew out of a transaction to which they are strangers; and they come into a court of equity to claim its assistance in obtaining a clue to the facts and circumstances of it, as well as a knowledge of their rights. Are they not entitled to it? True, an execution against an insolvent corporation, on a judgment at law, may be followed by the appointment of a sequestrator, and a bill by him for a discovery of effects; but that is no equivalent for the extraordinary powers of a chancellor, in bringing to light the circumstances of a hidden transaction, on which a party founds his right to recover. These complainants, therefore, were entitled to a discovery in the first instance. It is no objection to this interpretation, that the statute which gives equitable jurisdiction of constructive frauds, was enacted after the complainants had filed their bill. The cases cited on the argument show, that the courts do not incline against a retroactive operation, not on the right, but on the remedy; and more especially where they have a discretionary power over the costs.

The only plausible objection to the jurisdiction, is raised by the act of 1836 (division K.), which specifies the manner of levying an execution of the property of an insolvent corporation, and which might seem at first to be predicated of an execution on a judgment at law, not on a decree in equity; and it must be admitted, that a bill would not be entertained, unless the decree could be enforced. But to enforce it by attachment, would break down the provision for distribution among creditors. At the outset, however, that act speaks of "*all* executions which shall be issued from any court *of record;*" and our courts of law, when sitting in equity, are still such. It is true, a succeeding section speaks of executions on judgments; but a decree in equity, though not within the letter of the enactment, is within the spirit, and, consequently, within the true intent and meaning of it. If, then, an execution, in the common-law form, may be sued out to enforce a

decree for the payment of money, the benefit of equitable juris-
diction, in the first instance, may be preserved without impinging
on any statutory provision whatever. The plaintiff may prosecute
his right by bill; he may sue out execution on his decree; and he
may have a sequestrator, who may file a bill for the discovery of
effects, and distribute the fund just as if the right to recover had
been established by a judgment at law. Now, it fortunately
happens, that we have statute provisions for suing out execu-
tions on decrees for the payment of money, not only by the
Orphans' Court, but by the court below. By the 39th section
of the revised act of 1832, a decree of the Orphans' Court
may be enforced by attachment or sequestration; or a decree
for money against a party who appeared, by execution in the
nature of a *fieri facias;* to which the act of 1846 added a *venditioni
exponas,* with a right to issue *testatum* writs to any other county.
So far the powers of the Orphans' Court. By the act of 1845, to
allow and regulate appeals in equity, from the Common Pleas of
Philadelphia county to the Supreme Court, it is directed, that "if
an appeal be made from any order or decree of the said Court of
Common Pleas, in equity, for the payment of money, such appeal
shall not stay the issuing OF EXECUTION, or other process, to enforce
the decree, or any proceeding thereon, unless, &c." Nor is it of
account, that the power has not been granted in terms. In Mary-
land, lands were sold on execution by no other authority than a
forced construction of the 5 G. 2, c. 7, which was understood in
that state, to which it was extended in practice, to put them on
the footing of chattels; and their law, I believe, continues so still,
though it appears in Griffith's Law Register, vol. 4, p. 913, that
their equitable estates were subjected to execution, by a statute
enacted in 1810. Our statute requires no such construction; for
the power to enforce a decree for money by execution, is expressly
sanctioned, if it is not enjoined, by it. Nor is the merit of the
proceeding due to Pennsylvania. It may be seen, by turning to
Griffith's Register, that it was used, in his day, by the courts in all
the states which had a separate administration of equity, except Dela-
ware; and it is not to be presumed that its utility and convenience
in practice, had escaped the notice of our legislature. In Bevan *v.*
Dingman's-Choice Turnpike, decided at this term, *antè* 174, which
has been thought to stand in the way of the jurisdiction, the point
decided was, that a bill for the discovery of effects, pursuant to an
execution against an insolvent corporation, must be filed, not by
the plaintiff in the judgment, but by the sequestrator. The prayer

in the present bill, is not for the discovery and distribution of effects at all, but for a decree of recovery, and a discovery of facts and circumstances to found it. That obtained, the complainants have their execution by *fieri facias*, with its apparatus of sequestrator, bill of discovery, and distribution of effects, insisted on in the case to which the appellants have referred; and it will be seen from this, that it is not an authority for them.

Decree affirmed.