| 66 | 187 |
|----|-----|
| 147 | 495 |
| 66 | 187 |
| 151 | 599 |

</div>

# Bleakley's Appeal.

1. Irvin bought land by articles and paid part of the purchase-money; Lamberton entered a judgment against him, afterwards Irvin assigned the articles to Bleakley antedating the assignment to precede the judgment to defraud Lamberton, and Bleakley paid the vendor the balance of the purchase-money. Lamberton bought Irvin's title under his judgment. Lamberton was entitled to specific performance from the vendor without repaying Bleakley.

2. Bleakley was not entitled to subrogation to the vendor's rights.

3. Subrogation is of pure equity and benevolence, not of contract.

4. One attempting to defraud another by payment, cannot ask repayment from him attempted to be defrauded.

5. The payment was not on a bargain with the vendor, but was voluntary.

6. A chancellor will not assist one to obtain anything arising out of a fraud.

7. He who does iniquity shall not have equity.

October 19th 1870. Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Appeal from the decree of the Court of Common Pleas of *Venango county* : In Equity : No 54, to October and November Term 1870.

This was a bill in equity filed February 13th 1869, by Robert Lamberton against James Bleakley, Samuel P. Irvin and F. D. Kinnear.

On the 6th of August 1864 Kinnear contracted to sell to Irvin a lot of land in Franklin, Venango county, for $2600, of which $1000 were to be paid in hand, one-half of the remainder

[Bleakley's Appeal.]

in 6 months, and the balance on the 6th of August 1865, when the deed was to be made; the contract to be void and the payments made to be forfeited on failure to make any payment within 30 days after it was due. Irvin entered into possession about the 1st of September, made improvements, and paid all the purchase-money except $820. On the 1st of June 1865 a judgment was entered in favor of the First National Bank of Franklin against Irvin and others for $6000. Bleakley was and continued to be cashier of the bank. On the 10th of June a judgment against Irvin for $15,440.05 was entered in favor of Lamberton, the plaintiff, in the Court of Common Pleas of Venango county. About July 19th 1865, Irvin executed a written assignment of his interest in the lot to Bleakley; this assignment was dated May 1st 1865. Bleakley paid Kinnear $820, the balance of the purchase-money, August 5th 1865. The bank issued an execution on their judgment on the 7th of June 1866; it was satisfied by a sale of the defendants' property. On the 14th of October 1867 the plaintiff issued an execution on his judgment, purchased Irvin's interest in the lot at sheriff's sale on the 4th of November 1867, and shortly afterwards took possession of it.

The bill set out the foregoing facts, averred that the assignment of Irvin was antedated at the instance of Bleakley, with intent to defraud the plaintiff. The prayer was that the assignment might be cancelled and Kinnear be decreed to execute a deed to the plaintiff.

Bleakley answered that he took the assignment and made the last payment to Kinnear to prevent a forfeiture of the lot and money; that the understanding with Irvin was that he was to hold the lot until Irvin repaid the $820 and settled his indebtedness to the bank, and then reassign to Irvin's wife. He denied knowledge at the date of the assignment of Lamberton's judgment and that the assignment was antedated with intent to defraud.

August 26th 1869, the bill was taken *pro confesso* as to Irvin and Kinnear for default in answering, and W. C. Rheem, Esq., was appointed examiner and master. He reported finding the facts substantially as above stated, and that " the assignment was antedated with intent to defraud the plaintiff."

Bleakley filed exceptions to the report, which were over-ruled by the court, Trunkey, P. J., who decreed:—

That the assignment be and remain of no force or effect what-soever against the plaintiff, Robert Lamberton, his heirs and assigns, and as to him and them absolutely void.

That the said F. D. Kinnear, his heirs and assigns, be prohibited and for ever enjoined from making and executing a deed to said James Bleakley for the said lot of ground.

That the said F. D. Kinnear may have leave to execute and deliver to the said Robert Lamberton a deed in fee simple for the

said lot, upon the payment by said Lamberton for the revenue stamps required to be placed thereon.

That the defendants, James Bleakley and Samuel P. Irvin, pay the costs of this action.

Bleakley appealed to the Supreme Court and assigned for error :—

1. Overruling the 7th exception to the master's report, viz.: " The master erred in not finding that the effect of the payment by Bleakley to Kinnear was to enhance Lamberton's security by discharging the prior lien for purchase-money, and in not finding that Lamberton, the execution-creditor, stood in the shoes of Irvin his debtor, and had no other or greater rights in the premises than Irvin himself had."

2. Overruling the 8th exception to the master's report, viz.: " The master should have found that Bleakley, by assignment from Irvin and payment of balance of purchase-money to Kinnear, had the right to call upon Kinnear for the legal title, and that the legal title was in Bleakley, subject to the right of Lamberton to demand the same on paying the purchase-money which was due by Irvin at the date of the assignment to Bleakley."

3. In entering a decree in favor of Robert Lamberton, the plaintiff, he having neither paid nor offered to pay defendant Bleakley the eight hundred and twenty dollars and interest, purchase-money paid F. D. Kinnear on the 1st May 1865.

4. In entering their decree making null and void as to Robert Lamberton the assignment of S. P. Irvin to James Bleakley, and decreeing the execution and delivery of a deed from F. D. Kinnear to said Lamberton without imposing terms on said Lamberton, to wit, that he pay to James Bleakley eight hundred and twenty dollars with interest from August 6th, 1865, being amount of purchase-money paid by said Bleakley to F. D. Kinnear on article of agreement, on the 5th day of August, 1865.

5. In making a decree cancelling the assignment and decreeing the execution and delivery of a deed from Kinnear to Lamberton on grounds not charged or set forth in the bill, to wit, the making and procuring the assignment from Samuel P. Irvin with intent to hinder and delay creditors.

*W. L. Cook* (with whom was *S. C. T. Dodd*), for appellants.— Judgments are not a lien on after-acquired property: Water's Appeal, 11 Casey 524. If the vendee assigns his equity, and the assignee makes payments on the contract, a judgment against vendee will not attach on the estate as enlarged by such payments: Russell's Appeal, 3 Harris 319 ; Dennison's Appeal, 1 Barr 201 ; Academy *v.* Frieze, 2 Watts 16 ; Walson *v.* Willard, 9 Barr 96. A judgment-creditor is not a purchaser ; he stands on the footing of his debtor : Cover *v.* Black, 1 Barr 493 ; Reed's Appeal, 1 Harris 476.

A conveyance fraudulent as to creditors is good as between the parties; such conveyance is voidable, not void: Anderson *v.* Roberts, 18 Johns. R. 527; Pearsoll *v.* Chapin, 8 Wright 13; 4 Kent's Com. 517; 1 Story's Eq. Jur., § 371; Curtis *v.* Price, 12 Vesey 103. In some cases, even where the instrument is void, the court will impose terms: 2 Story's Eq. Jur. 696. Bleakley having paid the purchase-money the legal seisin was in him: Pritts *v.* Richey, 5 Casey 77. A decree working injustice will not be made: 2 Story's Eq. Jur., § 769; Brightly's Eq. Jur., § 216. It requires less for a defendant to resist than for a plaintiff to enforce. Lamberton must do equity by paying the unpaid purchase-money before he can ask a conveyance: 2 Story's Eq. Jur. §§ 769, 771.

*C. Heydrick* (with whom was *C. W. Gilfillan*), for appellee, cited Russell's Appeal, Academy *v.* Frieze, *supra;* Eckman *v.* Eckman, 5 P. F. Smith 273.

The opinion of the court was delivered, October 27th 1870, by AGNEW, J.—The facts of this case are few. Robert Lamberton was the owner of a judgment for $31,000, entered against Samuel P. Irvin on the 8th day of June 1865. Irvin had purchased of F. D. Kinnear, Esq., lot No. 449 in Franklin at $2600, of which $820 only remained unpaid, and would fall due on the 6th of August 1865, with a provision for forfeiture of the contract in case of non-payment for thirty days after it fell due. On the 19th of July 1865, Irvin assigned his contract to James Bleakley, binding him to pay the $820 to save the forfeiture, and with the admitted understanding that Irvin should refund the $820 to Bleakley, settle his indebtedness to the bank, of which Bleakley was cashier, and that then Bleakley should reconvey to Irvin's wife. But the assignment was antedated to the 1st of May 1865, thus overreaching Lamberton's judgment. The master finds that this was done to defraud the plaintiff. The finding is ably vindicated in the opinion of Judge Trunkey. The absolute character of the paper, though but a security, the agreement to reconvey to Irvin's wife instead of himself, and the attempt of Bleakley to use the paper to defeat the sheriff's sale of the property by Lamberton on his judgment, evince the true motive for antedating the paper.

Bleakley paid the $820 to Kinnear, and now claims a decree for this sum, before specific performance shall be decreed to Lamberton, who purchased Irvin's title at the sheriff's sale. Kinnear does not resist specific performance, but stands ready to convey to Lamberton, whenever the covinous assignment to Bleakley is put out of his way. It is Bleakley who resists the decree until he is refunded the $820, paid upon the footing of the fraudulent

[Bleakley's Appeal.]

agreement with Irvin, to defeat Lamberton's judgment. Bleakley is made a party to the bill only for the purpose of putting aside the covinous assignment to enable Kinnear to convey to Lamberton. The question then is whether a chancellor would require Lamberton to refund the $820 to Bleakley, as a condition to setting aside the assignment and entitling Lamberton to specific performance of Kinnear.

But clearly Bleakley cannot demand repayment of Lamberton either at law or equity. And first he is not entitled to subrogation to Kinnear's rights. Subrogation is not a matter of contract but of pure equity and benevolence: Kyner *v.* Kyner, 6 Watts 221; Wallen's Appeal, 5 Barr 103. On what pretence, *in foro conscientiæ*, can a party attempting to carry out a scheme of fraud against another, by a payment, claim compensation of the party he has attempted to defraud? Conscience and benevolence revolt at such an iniquity. Again Bleakley did not recognise Kinnear's title by the payment. He did not profess to bargain for it, and Kinnear did not profess to sell it to him. His act was simply a *payment* and no more, made by him because of Irvin's duty to pay, and accepted by Kinnear because of his right to receive from Irvin. Besides the payment was accepted by Kinnear in ignorance of the attempted fraud. There can be no legal intendment therefore of a bargain on Kinnear's part to vest his right to receive the money in Bleakley. As to Lamberton the payment by Bleakley was not only fraudulent and intended to displace his judgment, but it was also voluntary. It was not paid at Lamberton's request nor for his use and benefit; but on the contrary was intended to defeat his right, as a creditor by overlapping his judgment, by means of the covinous transfer. Bleakley is therefore neither a purchaser, nor a creditor of Lamberton, nor an object of benevolence, but is forced upon the record to compel him to put out of the way the fraudulent barrier to Kinnear's specific performance to Lamberton. He cannot, thus standing before a chancellor, ask him to make repayment to him a condition to a decree to remove the fraudulent obstruction he threw in the way. The payment is one of the very steps he took to consummate the fraud upon Lamberton. If he have a legal right of recovery he must resort to his action at law, and if he can have none, it is a test of his want of equity. And in addition to all this, it is a rule that a chancellor will not assist a party to obtain any benefit arising from a fraud. He must come into a court of equity with clean hands. It would be a singular exercise of equity, which would assist a party, who had paid money to enable him to perpetrate a fraud, to recover his money, just when the chancellor was engaged in thrusting out of the way of his doing equity to the injured party, the very instrument of the fraud.

[Bleakley's Appeal.]

Who does iniquity shall not have equity : Hackney *v.* Weitney, 14 Wright 244–5.

We are therefore of opinion the court committed no error in refusing compensation, and the decree of the court below is confirmed.