## Mortland, Appellant, *v.* Mortland.

[Marked to be reported.]

*Equity—Jurisdiction—Fraudulent procurement of deed—Cancellation—Acts of June 13, 1840, and Feb. 14, 1857.*

Under the acts of June 13, 1840, and Feb. 14, 1857. the courts of common pleas as courts of equity have jurisdiction to entertain a bill to set aside a deed alleged to have been executed by an attorney in fact through the corrupt procurement of the grantee. And the fact that ejectment might lie will not oust the jurisdiction of equity.

*Repayment when not condition for decree of rescission.*

Where an attorney in fact, whose power has been revoked, executes a deed for land at the corrupt solicitation of the grantee and receives from the grantee money which he does not pay over to the owner of the land, the owner will not be compelled to repay the amount to the grantee as a condition precedent for a decree rescinding the deed.

*Equity practice—Form of master's report.*

A master's report should set forth a clear and concise finding of the material facts, unburdened by recitals of, references to, or comments upon the evidence. This should be followed by an opinion upon the facts so found with citation of authorities; but such opinion should be as brief as the subject will admit.

Argued Oct. 17, 1892. Appeal, No. 33, Oct. T., 1892, by plaintiffs, Carlyle Mortland et al., from decree of .C. P. Butler Co., June T., 1890, No. 2, in equity, dismissing bill in equity, against Susan Mortland et al. Before STERRETT, GREEN, WILLIAMS, McCOLLUM, MITCHELL and HEYDRICK, JJ.

Bill in equity for rescission of deed. The bill averred substantially the fact stated in the opinion of the Supreme Court. The answer denied the material averments of the bill and prayed that the bill be dismissed for want of jurisdiction.

The case was referred to W. H. H. Riddle, as master, who reported in favor of a decree as prayed for in the bill. Exceptions to the master's report were sustained, and the bill was dismissed for lack of jurisdiction, by the court, HAZEN, P. J.

*Errors assigned* were (1) dismissal of bill; (2) at cost of plaintiff.

*Charles McCandless, Newton Black* with him, for appellants.—If the court in which suit is brought has jurisdiction of the cause of action both at law and in equity it may proceed to give relief, unless the bill be demurred to on the ground that the proper remedy is at law: Story, Eq. Jurisp. § 464; Adams's Ap., 113 Pa. 449; Sunbury & Erie R. R. v. Cooper, 33 Pa. 278; Evans v. Goodwin, 132 Pa. 136. While it is true manifest want of jurisdiction in equity may be taken advantage of at any stage of the cause, the court will not permit an objection to its jurisdiction to prevail in doubtful cases after parties have voluntarily proceeded to a hearing on the merits, but will administer suitable relief: Adams's Ap., 113 Pa. 449; Evans v. Goodwin, 132 Pa. 136; Edgett v. Douglass, 144 Pa. 95.

In this case defendants should have formally demurred to the bill if they wanted to raise the question of jurisdiction. The courts should lean to a liberal exercise of the equity powers conferred without encouraging technical niceties in the modes of procedure and forms of pleading: Kirkpatrick v. McDonald, 11 Pa. 387. The extension of the remedy by actions at law to cases originally within the jurisdiction of equity is no bar to the equitable jurisdiction of the courts for the same cause: Wesley Church v. Moore, 10 Pa. 274; Kirkpatrick v. McDonald, 11 Pa. 387; Dull's Ap., 113 Pa. 510; Perdue v. Taylor, 146 Pa. 175; Bierbower's Ap., 107 Pa. 14; Electric Co.'s Ap., 114 Pa. 574.

Great inadequacy of price is evidence of fraud and deeds have been set aside therefor: Hamet v. Dundass, 4 Pa. 178; Davidson v. Little, 22 Pa. 245; Meurer's Ap., 119 Pa. 115.

As defendants obtained this alleged deed by their own fraudulent acts, plaintiffs are in no way blamable, and defendants cannot therefore ask to have their money refunded: Meurer's Ap., 119 Pa. 115, and cases cited on page 127, same case.

The burden of proving the bona fides of the transaction is upon defendants, the gainers by the transaction: Warrall's Ap., 110 Pa. 349; Miskey's Ap., 107 Pa. 611; Cuthbertson's Ap., 97 Pa. 163; Darlington's Ap., 86 Pa. 512.

*John M. Thompson* and *Lev. McQuistion* for appellees.— Equity will not assume jurisdiction where title to real estate is involved: 1 Pomeroy, Eq. Jur. 177; North Penna. Coal Co. v. Snowden, 42 Pa. 488; Lewis v. Cocks, 23 Wall. 466. Appellants had an adequate remedy at law: Act of March 8, 1889; and equity will not therefore assume jurisdiction: Bailey v. Fitzpatrick, 8 Phila. 93; Hamersly v. Turnpike Co., 8 Phila. 314; Pittsburgh Drove Yard Co.'s Ap., 123 Pa. 252; Peterman v. Huling, 31 Pa. 432; Schive v. Fausold, 137 Pa. 82.

OPINION BY MR. JUSTICE HEYDRICK, November 7, 1892.

The single question presented by the pleadings in this cause is whether the deed of James Mortland and wife to Susan Mortland was fraudulently executed by Steven Mortland, as their attorney in fact, through the corrupt procurement of the grantee or her agent. It was therefore a proper subject of equity jurisdiction. By the 39th section of the act of June 13, 1840, the

equity jurisdiction of the court of common pleas of the city
and county of Philadelphia was "extended to all cases arising
in said city and county over which courts of chancery entertain
jurisdiction on the ground of fraud, accident, mistake or ac-
count;" and by the first section of the act of February 14,
1857, P. L. 39, the like jurisdiction was conferred upon the
courts of common pleas of the several other counties of this
commonwealth. Speaking of the general jurisdiction of chan-
cery, a writer of great respectability says: "Apart from stat-
utory limitations, the better opinion would seem to be that the
cognizance of every case of fraud, with the single exception of
obtaining a will, belongs to the court of chancery, even though
there may be a complete remedy at law. The jurisdiction in
such a case is concurrent. This is the opinion of Lord ELDON,
Chancellor KENT and Mr. Spence. The true conclusion would
appear to be that equity would have the *power* to entertain a
bill in such cases, but that it is not according to the usual
course and practice of chancery to do so. Where, however,
the remedy at law is not full and adequate the jurisdiction of
chancery is undoubted." Bispham's Principles of Equity, sec-
tion 200. In Pennsylvania the disposition has been towards a
liberal exercise of the equity powers conferred by the statutes:
Wesley Church v. Moore, 10 Pa. 273; Kirkpatrick v. McDon-
ald, 11 Pa. 387; Bierbower's Appeal, 107 Pa. 14; Brush Elec-
tric Light Company's Appeal, 114 Pa. 574. But whether we
have amplified the jurisdiction in cases of fraud beyond the
limits recognized elsewhere need not be inquired. A remedy in
which a single judgment would not at once and forever end
the controversy would nowhere be regarded as complete and
adequate. Such a remedy is the common law action of eject-
ment. It might require three verdicts and judgments in as
many different actions to settle the *title*, and still the fraudu-
lent deed brushed aside in two of them would remain out-
standing as a cloud upon the title thus vindicated. Perhaps,
in a case in which the only point of contention was whether a
deed under which one of the parties claimed had been fraudu-
lently procured, that circumstance would give to one verdict
and judgment the conclusiveness of decree in chancery. But
without expressing an opinion upon this point, it is enough to
say that if it were so the record would have to be patched out

with parol proof as to the precise issue tried, and when so patched out it would be conclusive because the ejectment was a substitute for a bill in chancery; and since in such case the judge would exercise the functions of a chancellor and control the verdict, there would be no reason for holding that the clumsy substitute, resorted to from necessity at a time when our courts were not invested with the ampler powers conferred by the acts of 1836 and 1840, lay in the way of the more convenient and efficacious remedy provided by those acts. As well might it be said that a bill for specific performance of a contract for the sale and purchase of land cannot be maintained because prior to the act of 1836 ejectment was the well-known remedy in such cases and may still be invoked. It follows that the learned court below erred in dismissing the plaintiff's bill for a supposed want of jurisdiction. It remains to consider whether upon the proofs the plaintiffs were entitled to the relief which they demanded.

The master has not found the facts with that distinctness which is desirable, but, following a practice which seems quite prevalent, has blended part of his findings with his opinion, and in some instances assumed the existence of certain facts to be known and undisputed, instead of saying explicitly that he found them from the evidence. And just here it may not be amiss to call the attention of the legal profession to the importance of a clear and concise finding of the material facts in such cases as are referred to masters and auditors, unburdened by recitals of, or references to, or comments upon the evidence. This should be followed by an opinion upon the facts so found, with citation of authorities. But such opinion, to be helpful to the court, should be as brief as the subject will admit.

From the master's report in this case the following facts may be gathered: James Mortland, the ancestor of the plaintiffs, was the owner of fifty acres of land situate in Butler county in this state, and at the time of the transactions hereinafter stated resided in the state of Illinois. On the 17th day of March, 1879, he executed a power of attorney authorizing Stephen Mortland to sell and convey that land. Having executed none of the powers delegated to him by this instrument, Stephen Mortland nine years later requested James to get one Newton Mortland to relieve him, and James accordingly exe-

cuted a power of attorney to Newton on the 24th of July, 1888, authorizing him to sell, lease or dispose of the land, but reserving to himself the power of conveying. The former power of attorney was not surrendered because Stephen did not have it in his possession. In virtue of the last power of attorney Newton Mortland made a mining lease to certain parties on the 13th of August, 1889, under which one productive oil well was drilled within that year, and subsequently several more were drilled. On the 7th of March, 1890, the land was fairly worth $2,000, with a prospect of an increased value by reason of developments for oil. On that day Joseph C. Vanderlin, an attorney at law, repaired to the residence of Stephen Mortland with the draft of a deed from James Mortland and wife to Susan Mortland, already prepared for execution by Stephen as attorney in fact of the grantors, conveying the land in question, and by persuasion induced him to sign it, giving him at the time one hundred and fifty dollars, and suggesting that he might use it to pay his own debts. At and before the execution of this deed, Joseph C. Vanderlin, Susan Mortland and her husband knew that Newton Mortland had succeeded Stephen as the agent of James in respect to this land. The sale so made was never reported to James. The master mildly characterized this transaction as " an attempt, under the advice of counsel who was well acquainted with the circumstances surrounding the whole transaction, to wrest from the absent owner the title to his inheritance by the payment of a consideration which was scarcely a tithe of its value at a time when it was being successfully developed for oil." He might have been pardoned if he had used harsher language with respect to the facts which he found ; and the evidence would have justified findings even more damaging to some of the parties concerned in the transaction than any that are contained in his report. It appears that Stephen Mortland's intellect never very strong, had become impaired by sickness ; that he at first refused to sign the deed, saying that he had no power to do so, and that Newton Mortland was then attending to James's business ; that after about two hours of cajolery Vanderlin succeeded in getting his signature, and then enjoined him to say nothing about the transaction, saying that the money was for him, and that he had information that James would not live long and his heirs would

never know what had been done. And it farther appeared that the power of attorney under which Stephen purported to act had never been delivered to him, but had during all the time after its execution been in the custody of Vanderlin. Laying aside the question whether Stephen could act at all under the undelivered power of attorney,—and there is some doubt whether it had not been delivered to Vanderlin for him, —the procurement of the deed was "a fraud, pure and simple," and the plaintiffs are entitled to have it delivered up to them and canceled.

Something has been said about the supposed injustice of canceling the deed without requiring the return of the money given to Stephen Mortland, and the maxim, he that seeks equity must do equity, was invoked. To a similar invocation in Bleakley's Appeal, 66 Pa. 187, it was replied, quoting from Hershey v. Weiting, 50 Pa. 240: "Who does iniquity shall not have equity." The money was improperly given to Stephen as a reward for doing the wrong to redress which the plaintiffs have been put to the expense of this suit, and upon no principle can its return be demanded.

November 7, 1892, the decree of the court below is reversed and the plaintiffs' bill is reinstated; and it is now ordered, adjudged and decreed that the defendants Susan Mortland and Elias Mortland deliver up the paper writing purporting to be a deed from James Mortland and Margaret Mortland by their attorney in fact, Stephen Mortland, to Susan Mortland, bearing date the 7th day of March, A. D. 1890, described in the plaintiffs' bill to be canceled, and that the same be canceled, annulled and taken for naught, and that the same defendants pay the costs of this suit, including the master's fee to be taxed by the court below, and that in default of payment of the master's fee by the defendants upon demand the plaintiffs pay the same, with right thereafter to recover the same from the said defendants, and the record is remitted for the enforcement of this decree by the court below.