[No. 1208.   Decided August 7, 1894.]

FRANK B. COLE, *Receiver*, *Appellant*, v. THE SATSOP RAILROAD COMPANY *et al.*, *Respondents*.

STOCK AND STOCKHOLDERS — ENFORCEMENT OF SUBSCRIPTIONS BY RECEIVER — DEFENSES.

Subscribers to the stock of a corporation cannot escape liability as against creditors thereof on the ground that a portion of the stock was illegally subscribed for by another corporation, when the other stockholders have all taken with knowledge of that fact, and have paid a portion of their subscriptions for the purpose of enabling the corporation to commence business and incur indebtedness.

Although stock in a corporation has been subscribed for by an individual "as trustee," an action to recover on the subscription may be maintained against the real parties in interest, when the complaint alleges that such trustee made the subscription as the agent of the defendants, who were subscribers to the stock, at their request and for the benefit of each of them in proportion to his individual subscription.

Where a receiver has been appointed for an insolvent corporation in a proceeding prosecuted by creditors, the receiver has the rights of the creditors at whose instance he was appointed, and may maintain an action to enforce subscriptions to stock, although the corporation itself might not be authorized to sue on the subscriptions.

*Appeal from Superior Court, Pierce County.*

*Donworth & Howe, Thomas Carroll,* and *Dunning, Richards, Murray & Pratt,* for appellant.

*Parsons, Corell & Parsons,* for respondents.

The opinion of the court was delivered by

STILES, J.— The complaint in this case, to which a demurrer was sustained, alleged:

1. The incorporation of the Pacific Mill Company under the laws of Washington with a capital of $500,000, divided into 5,000 shares of the par value of $100 each.

2. The incorporation of the Satsop Railroad Company under the laws of Washington with a capital of $100,000, and having by its articles of incorporation authority to subscribe for and acquire stock in other corporations.

3. That the defendants subscribed for the entire capital stock of the Pacific Mill Company, as follows: Satsop Railroad Company for 198 shares; C. F. White *as trustee* for 4,300 shares; and other individuals for 502 shares.

4. That said subscription of said C. F. White as trustee for said 4,300 shares of the capital stock of the Pacific Mill Company was made by the said C. F. White as trustee and agent for the benefit of all of the shareholders of said Pacific Mill Company at the request of said shareholders and upon the express agreement between all of said shareholders that the said subscription was made by said C. F. White in trust for all the shareholders of said company, each of said shareholders to have an interest therein in proportion to the number of shares subscribed for by each subscriber in the individual name of such subscriber, and said subscription so made by said C. F. White as trustee and agent for said shareholders was so made in consideration of the mutual promises made to the

others by each of said shareholders, and in consideration of the benefits to be derived from being members of said corporation.

5. That the said subscription made by said C. F. White as trustee and agent for said shareholders was, after the making thereof, ratified and confirmed by said shareholders and held and used for their benefit, and was ratified and accepted by the Pacific Mill Company aforesaid as the subscription of said shareholders.

6. That the subscriptions made to the capital stock of said Pacific Mill Company by the said defendants and each of them individually and by their agent and trustee, the said C. F. White, were made with full knowledge of the subscription of the Satsop Railroad Company for 198 shares of the capital stock of said Pacific Mill Company.

7. That the Pacific Mill Company had commenced business, incurred a large indebtedness, and become insolvent.

8. That the individual interests of the defendants in the subscription of C. F. White as trustee were as set forth.

9. That no part of the subscription of C. F. White as trustee had been paid except the sum of $25,000, by the Satsop Railroad Co., and the amounts owing thereon and unpaid were as set forth.

10, et seq. That C. T. Le Ballister & Co. had recovered a judgment against the Pacific Mill Co. for $5,021.48 and costs; that an execution issued was returned nulla bona; that Le Ballister & Co. had commenced an action in behalf of themselves and all other creditors who should join them, for the appointment of a receiver, and other relief; that the Pacific Mill Company had been adjudged insolvent; that plaintiff had been appointed receiver; that proof of claims had been taken to the amount of $65,000; that the receiver had demanded of the board of trustees of the Pacific Mill Company that it levy an assessment upon the unpaid subscriptions to the stock of the company to an amount sufficient to pay said indebtedness, which had been refused; that the court upon the application of the receiver ordered a levy of fourteen per cent. on the said subscriptions, and authorized the receiver to bring suit therefor; that each of the defendants was notified of said assessment and called upon to pay the same in the sums set forth, but

each had failed and refused; and that the Pacific Mill Company was insolvent and had no assets whatever, except the stock subscriptions sued for.

Judgment was prayed accordingly.

From the briefs we are assured that the action of the court below was based upon *Denny Hotel Co. v. Schram*, 6 Wash. 134 (32 Pac. 1002). If so, we think the court overlooked many manifest differences between that case and this, as disclosed by the complaint which we have set forth with much fullness. It is true that the Satsop Railroad Company was a large subscriber to the capital stock of the Pacific Mill Co.; and it is also true that under the decision in Schram's case, it was not liable for any of its subscription, although it assumed to authorize itself to make the subscription by its articles of incorporation, and that without its subscription the capital of the Pacific Mill Company was not all subscribed for; that it was not authorized to commence business, and that subscribers sued under the same circumstances as Schram was would not be liable.

The action against Schram was the ordinary one of a corporation against one of its stock subscribers for the amount of his subscription, and nothing was there considered except the bare legal propositions arising out of the relations of the plaintiff and defendant on the facts. But in the case before us it is pointedly alleged that each of the subscribers had full knowledge of the subscription made by the Satsop Railroad Co., and that each of them paid his individual subscription, the subscription of White as trustee being the only one not paid. Such knowledge and action have frequently been held to constitute a waiver of the right of the subscriber to insist on a full subscription. Thompson, Liab. Stock., § 120; Morawetz, Priv. Corp., § 156, and cases cited; *Hager v. Cleveland*, 36 Md. 476; *Morrison v. Dusey*, 48 Md. 468; *Musgrave v. Morrison*, 54 Md. 161; *Kansas City Hotel Co. v. Hunt*, 57 Mo. 126.

Great force is added to the reason for thus holding when the purpose of the action is to procure funds with which to pay the creditors of an insolvent corporation.   Nearly fifty thousand dollars was paid in by the individual sub-scribers, the purpose of which payment could have been nothing else but to enable the corporation to commence its proposed business.   As against creditors the defendants cannot rely on the Schram case.

The respondents, however, present two other questions which are material:

1. It is sought to hold the respondents for the subscrip-tion of ''C. F. White, as trustee,'' under the fourth and fifth paragraphs of the complaint.

The position of the respondents on this point is, that in the absence of fraud parol evidence is not admissible to show that the subscription was other than what upon its face it appears to be; that the word trustee added to the name of the subscriber in such a case in making an orig-inal subscription, whatever may be its effect as to transfers and other entries upon the books of the company, has no effect whatever; and that the effect of our statute is to re-lieve the trustee from personal liability and to charge the trust estate, if any, and not to create a trust where there is no estate, or to charge a third party upon the allegation that he was the real party in interest and in that way open the door for the admission of parol evidence to vary the contract.

The statute referred to is Gen. Stat., § 1512:

''No person holding stock as executor, administrator, guardian or trustee   .   .   .   shall be personally subject to any liability as a stockholder of the company; but .   .   .   the estate and funds in the hands of   .   .   . the trustee shall be liable in like manner and to the same extent as the   .   .   .   person interested in the trust fund would have been, if he or she had been living and compe-tent to act and hold the stock in his or her name.''

But this law can have no bearing upon a case like this, for if one who has no estate for which he is acting as a trustee can subscribe for stock and escape liability by affixing the words "as trustee" to his signature, he is being directly aided by the law to commit a fraud both upon the corporation and other subscribers, which was never intended.     The first proposition, viz., that parol evidence is not permitted to show that the subscriber "as trustee" is not the real subscriber, has received general sanction in England.  Cook, Stockholders, § 253.     But in this country the rule has not been adhered to.  *Burr v. Wilcox*, 22 N.Y. 551.     While a trustee is not an agent, an agent is an agent in whatever way he may describe himself.     We can see no greater reason for restricting inquiry into this kind of a contract than into any other.     In *Stover v. Flack*, 30 N. Y. 64, it was held that although Stover alone subscribed for the stock, yet under the arrangement between him and Flack the latter was a stockholder, and was liable to contribute toward the debts of the corporation.     Here the allegation is broadly made that White made the subscription as the agent of the respondents, at their request and for the benefit of each of them in proportion to his individual subscription.     In other words, it was a "pool" subscription by a dummy, which was understood by the corporation and was ratified by it as the subscription of the individuals.     Nothing could be more strongly stated, and we think a cause of action was alleged.

2. The other point contended for by respondents is that the receiver, being the representative of the corporation and standing in its shoes, cannot maintain the action, because, inasmuch as the stock had not all been subscribed for, and the subscriptions were therefore not absolute, the corporation itself could not sue thereon.     Perhaps it might be justly argued from what has been said upon the subject of the alleged waiver of the full subscription, that in this

case the corporation could have sued notwithstanding the subscription of the Satsop Railroad Company. But it is not necessary to so hold in this case, for we think this particular receiver could maintain the action whether the corporation could do so or not. The authorities cited to our attention do not, when examined closely, hold to the contrary. The language used in High on Receivers, §§ 201, 315, is general, to the effect that a receiver is usually only clothed with such rights of action as the person or corporation over whose estate he has been appointed might have maintained; but the same volume recognizes it as usual for receivers to pursue and recover property of an insolvent sufficient to pay creditors (§ 455); and respondents concede that such is the fact. It is to be observed, however, that Mr. High's work, so far as receivers appointed at the suit of creditors in aid of execution are concerned, is based almost entirely upon New York cases, which, in turn, are founded upon the very full provisions of the code and laws of that state. See chap. 12, title "Creditors." But at § 324a the same author gives the same weight to decisions in Maryland and New York, holding that when there were acts of waiver on the part of the subscriber he would be estopped to defend against a suit on his subscription by a receiver, on the ground that the stock had been only partially subscribed, or that he had been deceived by false representations as to the condition of the paid up capital.

*Farnsworth, Receiver, v. Wood,* 91 N. Y. 308, discussed a personal liability imposed upon stockholders to the extent of the par value of their holdings, and did not depend upon subscriptions at all. *Haskell v. Worthington,* 94 Mo. 560 (7 S. W. 481), is a negative authority on the question of the effect of a waiver; but on the point in discussion it does not support the respondents. The plaintiff appears to have been a common law assignee of an insolvent corporation merely, who, it is well understood, takes

nothing but what is conveyed to him by the deed of assignment, and does not represent creditors. *Bouton v. Dement*, 123 Ill. 142 (14 N. E. 62). *Mann, Receiver, v. Pentz*, 3 N. Y. 415, depended entirely upon statute, the result turning upon the fact that it was sought to sustain an action by the receiver of a manufacturing corporation against a stockholder by a statute which applied only to moneyed corporations. In *Republic Life Ins. Co. v. Swigert*, 135 Ill. 150 (25 N. E. 680), the receiver was appointed upon the application of the state auditor showing the insolvency of the corporation and asking that its affairs be wound up. The receiver applied for leave to proceed against certain stockholders to set aside a cancellation of their subscriptions made by agreement with the company some years before. The court held that the transaction amounted to a purchase of its own stock by the corporation, which, as between the parties, was a valid one, and that the receiver stood so exactly in the shoes of the corporation that he could not overturn the arrangement made with stockholders. The opinion is based upon the statute of Illinois, which is a winding up act of the affairs of insolvent insurance companies and expressly prescribes the powers of receivers under it, which are held not to constitute them the representatives of creditors, except in the matter of distribution. But on page 172 this is said:

"Almost all of the cases cited by defendant in error fall in one or the other of the four classes following: . . . Where the receiver was appointed in a proceeding prosecuted by creditors, which was supplemental to execution, and the receiver had the rights of the creditors at whose instance and to secure whose claims he was appointed . . . *With the law of such cases we have no fault to find.*"

It is needless to call attention to the fact that the case before us is of the class mentioned. There is no reason apparent why Le Ballister & Co. might not have brought

this suit for themselves and such other creditors having unsatisfied judgments as might join them, for there is no specific property to be taken possession of; but it is certainly a common method of procedure for a receiver to be appointed in such cases, and when appointed he represents creditors and not the corporation, and by the order appointing him becomes possessed of the rights of creditors for the purposes of collection as fully as though their judgments were assigned to him. The cases cited from Maryland, *supra*, were all cases of this class, not depending upon statute.

The judgment is reversed, with directions to the superior court to overrule the demurrer.

DUNBAR, C. J., and ANDERS, J., concur.

SCOTT, J., concurs in the result.

HOYT, J., dissents.