## DILL *et al.* v. EBEY. *

No. 381.   Opinion Filed November 16. 1910.

1.   **CORPORATIONS—Actions Against Stockholders for Unpaid Subscriptions—Equitable Jurisdiction.** A complaint in a suit in equity wherein E., as receiver of an insolvent bank, joins certain subscribers to the capital stock of the bank as defendants, for the purpose of recovering unpaid subscriptions, that further alleges, in substance, that the judge of the court wherein said receiver was appointed. upon application of creditors, supported by a showing that the bank was entirely insolvent and without assets sufficient to distribute any part thereof to the bank or its shareholders, entered an order directing said receiver to retain counsel and institute proper proceedings against the defendants as subscribers for the capital stock of said insolvent bank to recover the respective amounts remaining unpaid on said subscription, or for the stock issued to them, for the benefit of all the creditors of said bank, and that this suit is filed in compliance with said order, states facts sufficient to warrant the trial court to treat such suit as one brought by the creditors of said insolvent bank over which a court of equity has jurisdiction and in which all the subscribers to the capital stock may be joined as defendants.

2.   **SAME.** Under such circumstances the right to maintain suit against the individual stockholders of an insolvent corporation to enforce their liability on unpaid stock subscriptions does not constitute such a plain, full. adequate remedy at law as to defeat a suit in equity against all stockholders for the collection and administration of the corporate assets as a trust fund for the benefit of the creditors.

(Syllabus by the Court.)

*Error from District Court, Okfuskee County; John Caruthers, Judge.*

*Appealed to the Supreme Court of the United States.

Action by W. H. Ebey, as receiver of the Citizens Bank and Trust Company of Stonewall, against W. H. Dill and others. Judgment for plaintiff, and defendants bring error. Affirmed.

*John H. Burford* and *C. T. Huddleston,* for plaintiffs in error.

*Clinton A. Galbraith, Tom D. McKeown,* and *W. W. Witten,* for defendant in error.

KANE, J.   This suit was filed prior to statehood, in the United States Court for the Western District of the Indian Territory, sitting at Okmulgee, on the equity side of the docket, by the defendant in error, W. H. Ebey, as receiver of the Citizens Bank and Trust Company of Stonewall, as plaintiff, against the plaintiffs in error, M. W. Krouse, W. H. Dill, H. G. Malot, J. E. Guier and Sam Ward, as defendants.   The complaint, omitting the caption, is in words and figures as follows:

"Comes now the said plaintiff and represents that he is the duly appointed, qualified receiver of the Citizens Bank & Trust Company of Stonewall, Indian Territory, a corporation, organized under the laws of the Indian Territory and engaged in business at Stonewall prior to the time of the appointment of the plaintiff. as its receiver, and that the defendants, W. H. Dill and H. G. Malot, are citizens of the western district of the Indian Territory, and reside nearer to Okmulgee than any other place of holding court in said district, and for cause of action the plaintiff avers: 1  That heretofore, to wit, on or about the 14th day of March, 1905, the said defendants, M. W. Krause, J. E. Guier, W. H. Dill and Sam Ward as corporators, organized the Citizens Bank & Trust Company for the purpose of transacting a general banking and trust business at Stonewall in the Indian Territory; that M. W. Krause was elected president, and W. H. Dill was elected vice-president, and J. E. Guier was elected cashier of said corporation; that said officers together with Sam Ward constituted the first board of directors of said Citizens Bank & Trust Company, and the articles of incorporation and certificate required by law were filed with the clerk of the United States Court of Appeals for the Indian Territory, at South McAlester, on the 13th day of February, 1905; that the objects and purposes of said corporation were set out in detail in the certificate filed as aforesaid,

and said certificate also recites that the capital stock of said Citizens Bank & Trust Company is and was twenty-five thousand dollars ($25,000), divided into shares of twenty-five dollars each, and that ten thousand dollars of said capital stock had been actually paid in by the subscribers and that the names of the stockholders and the number of shares subscribed for by them are as follows: W. M. Krause, president, 120 shares; W. H. Dill, 80 shares; J. E. Guier, 160 shares; and Sam Ward, 40 shares; that on the said 14th day of March, 1905, as the plaintiff is advised and believes, and on such information and belief, alleges the fact to be, H. G. Malot subscribed for 80 shares of the capital stock of the Citizens Bank & Trust Company, taking 40 shares of the 160 shares subscribed for by J. E. Guier, and 40 shares of the 120 subscribed for by M. W. Krause; that on the said 14th day of March, 1905, there was issued certificate number 1 to M. W. Krause for 80 shares of the capital stock of the said Citizens Bank & Trust Company; that on the same day certificate number 3 for 80 shares of the capital stock of the said Citizens Bank & Trust Company was issued to W. H. Dill; that on the same day certificate number 5 for 80 shares of the capital stock of said Citizens Bank & Trust Company was issued to H. G. Malot; that on the same day certificate number 4 for 120 shares of the capital stock of the said Citizens Bank & Trust Company was issued to J. E. Guier; that on the same day certificate number 6 for 40 shares of the capital stock of the said Citizens Bank & Trust Company was issued to Sam Ward; that each of the said defendants undertook and agreed to pay the said Citizens Bank & Trust Company the par value of the respective shares of stock issued to them, namely: That M. W. Krause undertook and agreed to pay to the Citizens Bank & Trust Company for the 120 shares of stock issued to him, the sum of three thousand dollars; that H. G. Malot undertook and agreed to pay the par value of the 80 shares of stock issued to him, to wit, two thousand dollars; that W. H. Dill undertook and agreed to pay said Citizens Bank & Trust Company the par value of the 80 shares of stock issued to him, to wit, two thousand dollars; that Sam Ward undertook and agreed to pay said Citizens Bank & Trust Company the par value of the 40 shares of stock issued to him, to wit, one thousand dollars; that J. E. Guier undertook and agreed to pay said Citizens Bank & Trust Company the par value of the 120 shares of stock issued to him, to wit, three thousand dollars. That plain-

tiff is advised and believes, and, on such information and belief, alleges the facts to be that the only one of said defendants who paid any part of the par value of said stock or anything of value for the stock subscribed for and issued to them, was the defendant M. W. Krause, who paid to said Citizens Bank & Trust Company the sum of two thousand dollars; and that after said sum had been paid the same was later returned to said defendant; and, as plaintiff is informed and believes, and, on such information and belief, alleges the fact to be, the said defendants organized said Citizens Bank & Trust Company without any purpose or intent to pay for its capital stock or any part thereof, except the two thousand dollars paid in by the defendant, Krause, and that this sum was paid in with the distinct understanding that it should be returned after the corporation came to be a going concern, the sworn statement in the certificate of incorporation that ten thousand dollars had been actually paid in to the contrary notwithstanding. 2. That the said Citizens Bank & Trust Company was and is insolvent and on the 20th day of February, 1906, on the petition of one of its creditors the plaintiff was appointed by the United States Court for the Southern District of the Indian Territory receiver to take charge of all of its property and effects, and to administer the same under the order of said court, for the benefit of all its creditors; that the liabilities of said Citizens Bank & Trust Company at the time the plaintiff took charge of its assets as receiver, as shown by its books, were $15,179.02; that a great deal of the paper of said Citizens Bank & Trust Company is worthless and a very small sum can be realized from the same and the rest of its assets; that after six months' efforts the plaintiff has only been able to collect on notes $60.50, and to realize on other property the sum of $100.00; that all of the capital stock of said Citizens Bank & Trust Company represented as paid in, namely, ten thousand dollars, and the assets in the hands of the plaintiff, as receiver, will not be sufficient to pay to the creditors of said Citizens Bank & Trust Company. 3. That on a partial presentation of the foregoing facts to Judge J. T. Dickerson, an order was made on the 15th day of August, 1906, directing the plaintiff, as receiver, to retain counsel and to institute proper proceedings against the defendants as subscribers for the capital stock of the said Citizens Bank & Trust Company to recover the respective amounts remaining unpaid on said subscriptions, or for the stock issued to them, for the benefit of

all the creditors of the Citizens Bank & Trust Company; that this suit is filed in compliance with said order; that the plaintiff has made demand on each of said defendants for the amount due on his subscription, or for the stock of said Citizens Bank & Trust Company issued to him; that they have each failed, neglected and refused to pay the same or any part thereof; that there is now due the plaintiff as receiver of the Citizens Bank & Trust Company as unpaid subscription for capital stock issued to them, namely: M. W. Krause, three thousand dollars; W. H. Dill, two thousand dollars; H. G. Malot, two thousand dollars; Sam Ward, one thousand dollars; J. E. Guier, three thousand dollars, together with interest thereon from the 14th day of March, 1905.  4. That the plaintiff has no adequate remedy at law and unless this court takes jurisdiction of this suit in equity he will be driven to a multiplicity of actions in trying to enforce the liability of said defendants at law, and the funds of said estate will be greatly depleted in paying the additional costs and expenses necessary in filing and prosecuting such actions.  Wherefore, the plaintiff prays the decree of this court in his favor as receiver against M. W. Krause for three thousand dollars and interest; against H. G. Malot for two thousand dollars and interest; against W. H. Dill for two thousand dollars and interest; against J. E. Guier for three thousand dollars and interest; and for such other and further relief as to the court may seem just and proper."

To this complaint defendant W. H. Dill filed a demurrer, upon the grounds:  (1) That said complaint does not state any sufficient facts to authorize a court of equity to assume jurisdiction; (2) that said complaint shows upon its face that complainant has a complete, adequate remedy at law; (3) that this defendant is entitled to a trial by jury under the law and Constitution of the United States, of which he would be deprived should this cause be tried in equity; (4) for the reason that said court has no jurisdiction in equity to hear and determine the said cause.

This demurrer was overruled by the court, to which ruling the defendant Dill duly excepted.  After statehood the cause was transferred from the district court for Okmulgee county to the district court for Okfuskee county, and the defendant Dill was given thirty days within which to file his answer.  The answer of Dill amounted to an admission that he subscribed to the stock,

and an averment that he had paid for the same.   Mr. Dill seems
to be the only defendant to file any pleadings, although the record
shows that defendant Malot appeared at the trial in person and
by counsel.   Upon trial the court found in favor of the defendant.
Malot and against the defendant Dill, and entered a decree dis-
missing the cause against Malot, and that the plaintiff W. H.
Ebey, as receiver of the Citizens Bank & Trust Company of Stone-
wall, do have and recover of and from the defendant W. H. Dill
the sum of two thousand dollars, together with interest thereon
from the 14th day of March, 1905, and the costs incurred by him
in this action.   To reverse this judgment this proceeding in error
was commenced.

The main contention of counsel for plaintiff in error is that
the obligations arising under the facts stated in the complaint are
legal and not equitable; that they are based upon the contract
of subscription, and each subscription constitutes a separate obli-
gation that may be dependent upon separate, independent and
distinct facts; that the action stated is equitable in form only,
being but a bundle of separate actions, each of which grows out
of and rests upon an independent and distinct transaction; that
the relief prayed for is not of an equitable nature; that the ob-
ject and purpose of the action is the recovery of money, and in
all such cases, where a money judgment only is prayed for, a
court of equity is without jurisdiction.   Counsel base their con-
tentions upon the rule laid down in the case of *Tompkins v.
Craig et al.,* 93 Fed. 885, from which they quote as follows:

"The bill is demurred to upon the ground of multifariousness,
and we think the objection must prevail.   The statute does not
impose a joint but a several liability upon the defendants, and
they have no common interest in the decree asked for by the bill.
The plaintiff seeks to support the action upon the ground that
such a proceeding will prevent a multiplicity of suits, but this
is a reason in form rather than in substance; for, while the bill
has only one number upon the docket and calls itself a single
proceeding, it is in reality a bundle of separate suits, each of
which is no doubt similar in character to the others, but rests

nevertheless upon the separate and distinct liability of one defend-
ant.    The liability is legal, and not equitable.    It is based upon
the stockholder's contract of subscription, an implied term    of
that contract being the declaration of the statute that a certain
contingent liability should follow the subscription.    Each con-
tract is a separate obligation, and should be separately enforced.
As was pointed out upon the argument by the learned counsel
for the defendants, this is not a proceeding to determine how
large the assessment should be.    For obvious reasons, such an in-
quiry should be made in equity, and all the stockholders should be
parties.    But after the rate of assessment has been fixed, and the
individual liability of each stockholder has thus been ascertained,
the enforcement of such liability is the proper subject of a suit
at law, in which the separate rights of the defendant stockholder
are distinctively to be considered.    *Flash v. Conn.,* 109 U. S. 380,
3 Sup. Ct. 263."

We think the case at bar is somewhat distinguishable from
the case above quoted from and from the other cases to the same
effect cited by counsel.    In those cases the receiver appointed by
the court to wind up the affairs of the respective corporations
represented the corporations in the suits in which they appeared
as parties.    In the complaint herein there is an allegation to the
effect that, on a showing made to the judge who appointed the
receiver that the corporation was entirely insolvent and that there
would be no funds arising from the sale of its assets for dis-
tribution amongst the stockholders, he directed the receiver to re-
tain counsel and institute proper proceedings against the defend-
ants as subscribers of the capital stock of said Citizens Bank &
Trust Company, to recover the respective amounts remaining un-
paid on said subscription or for the stock issued to them, for the
benefit of all the creditors of the Citizens Bank & Trust Company,
and that this suit was filed in compliance with said order.    It
seems to us the foregoing allegation brings the instant case within
the rule laid down in *Fletcher et al. v. Bank of Lonoke et al.,*
71 Ark. 1, 69 S. W.    ·    That was an action commenced by the
receiver and other creditors for the use of the German National
Bank and certain other creditors of the Bank of Lonoke, against

the latter bank, C. W. England and other stockholders thereof, to recover so much of the stock of such shareholders as remained unpaid. Battle, J., in discussing the jurisdictional question raised, says: "The authority of the receiver to bring the action is no shown. We shall treat it as brought by creditors." And on that ground sustained the jurisdiction of the court. Counsel for plaintiff in error, in distinguishing the Arkansas case from the case at bar, quoted the foregoing statement by the judge who delivered the opinion for the court, and says: "Upon the theory that the suit was by the creditors of the bank, of course equity had jurisdiction." These cases seem to be similar in principle at least. The Arkansas suit was instituted for the use of the German National Bank and certain other creditors of the Bank of Lonoke, and this, by positive direction of the court, was commenced by the receiver for the benefit of all the creditors of the Citizens Bank & Trust Company, the insolvent corporation, after it was made to appear that the assets of the bank were entirely inadequate to pay the creditors. In *Lanigan v. North,* 69 Ark. 62, it was held that a liability created against the stockholders of a banking corporation may be enforced by a creditor in the courts of that state at law as well as in equity, and this notwithstanding it was held that "the statute definitely fixes the proportion of each debt or claim for which the stockholder is liable." As the laws of Arkansas were in force in the Indian Territory at the time the obligation herein was incurred and this suit commenced, the decisions of the Supreme Court of that state, although rendered after said laws were put in force in said territory, are entitled to great weight. The case of *Cook et al. v. Carpenter et al.,* 212 Pa. 165, was a suit in equity by Cook, as assignee of an insolvent corporation, against various stockholders to recover unpaid subscriptions to the capital stock. As in this case, the jurisdiction of a court of equity to determine such a cause was raised. Mr. Chief Justice Mitchell, who delivered the opinion of the court, in discussing this proposition, says:

"The preliminary question is the jurisdiction in equity. Ap-

pellants insist that there is a plain, full, and adequate remedy at law, by suits against the several stockholders defendant, where each can defend upon his own case, untrammeled by differences of fact in the others. That there is a remedy at law by separate actions against the respondents is undeniable, but is it a full and adequate remedy in the sense that it bars the jurisdiction of equity? The subject of the controversy is the collection and administration of corporate assets as a trust fund for the benefit of corporate creditors. Both the control of corporate matters and trust funds are in general the subject of equitable jurisdiction. As was said in *Lane's Appeal,* 105 Pa. 49, 65, 51 Am. Rep. 166: 'When insolvency and exhaustion of assets (of corporations) exist, the unpaid capital is not available to any one creditor in satisfaction of his debt, because then the whole amount of the unpaid capital is a trust fund, which does not belong to the corporation, but to the whole body of its creditors. Hence, whether the proceeding originates in the name of one, or of several, or of all the creditors, the result is the same in each. The capital, when recovered, inures to the benefit of all, and must be distributed among all ratably.' This result as to collection, and still more forcibly as to distribution, is not reasonably practicable, except in equity. A bill may be filed, as in this case, by assignees representing the corporation for the benefit of creditors, or, as in *Lane's Appeal, supra,* by creditors in their own names in behalf of themselves and others. In the latter case an action at law would present insuperable difficulties, and yet the substantial controversy is the same, and the mere difference in the nominal complainant should not oust in one case the jurisdiction that must be sustained in the other.

"It is earnestly argued by appellants that in all the cases where a bill has been sustained an accounting was part of the relief sought, and that equitable jurisdiction attached on this ground alone, while in the present case no accounting is asked, as the bill avers that the whole unpaid subscription will be insufficient to pay the debts. It is true that the necessity for an accounting is a large and influential element in equitable relief; but we do not find it said in any of the cases that its presence or absence is the conclusive jurisdictional fact. In the present case the bill sets up facts that avoid the necessity for an accounting and an assessment. But suppose the answer had denied the averments and thus made the necessity of an accounting and assess-

ment an issue; that would at once have made the case one cognizable in equity. *Citizens & M. Sav. Bank & Trust Co. v. Gillespie,* 115 Pa. 564, 9 Atl. 73, was an action at law in which such necessity was part of the issue, and the case had to be sent to a new trial for the reception of incompetent evidence on that point. Whether all the unpaid capital is required for payment of debts, or only part, and, if so, how much, are matters of judgment on the evidence, and different juries are likely to differ in their conclusions. The result would be that in numerous suits by the assignees some stockholders defendant might have to pay their subscriptions in full, while some paid only part, and others perhaps nothing at all. This would be incurring certain inconvenience and quite probably injustice, where the relief should not only be certain, but uniform. As was well said by the learned judge before: 'There are more than forty defendants. Most of them live within the jurisdiction; some do not; and it is quite conceivable that there might be hundreds living without the jurisdiction, not reachable by our process at law. The question involved in all the cases is substantially the same, namely, Ought the corporation to collect in its unpaid capital? It is a pure question of law, and may be decided once for all in one suit as well as in a thousand. If the balance should not be collected from all, then it ought not to be collected from any. If, on the other hand, it should be collected, then none should escape.'

"In the absence of chancery powers in our courts, equitable relief was afforded wherever practicable in common-law forms. When, later, the Legislature granted equitable powers, it was held that, if the subject of a bill was one within the proper and established jurisdiction of chancery, the invention of a new remedy in common-law form, or the extension of an old one, would not necessarily oust the equitable jurisdiction. *Wesley Church v. Moore,* 10 Pa. 273. The question in such cases turns on the completeness, adequacy and convenience of the remedy at law, and our decisions have been liberal in the consideration of all these elements. *Kirkpatrick v. M'Donald,* 11 Pa. 387; *Bierbower's Appeal,* 107 Pa. 14; *Brush Electric Co.'s Appeal,* 114 Pa. 574, 7 Atl. 794; *Johnston v. Price,* 172 Pa. 427, 33 Atl. 688; *Gray v. Citizens' Gas Co.,* 206 Pa. 303, 55 Atl. 988. In the last case it was said by our Brother Dean: 'The question raised in this case is not alone whether plaintiff has a remedy at law, for that remedy it clearly

has; but whether, in view of the facts, it is an adequate one. It may be conceded that the time is not very remote in our judicial history, when a wronged party sought the intervention of equity, and he could be truthfully met by the reply, "You have a remedy at law in an action for damages;" such reply would have been the end of his bill; he would have been turned out of court for want of jurisdiction. But this answer is no longer conclusive as to the jurisdiction; courts now go further, and inquire whether, under the facts, the remedy at law is not vexatiously inconvenient, and whether it is so proximately certain as to be adequate to right the wrong complained of.' Testing by this standard the numerous actions that would be required at law, and comparing that remedy with the superior certainty, uniformity and convenience of the present bill, we have no hesitation in holding that it is a proper case for equitable jurisdiction."

In *Hayden v. Thompson*, 71 Fed. 60, the right of a receiver of an insolvent national bank to maintain a bill in equity against the shareholders of the bank, collectively, to recover dividends which had been paid in violation of the national banking laws, was upheld. The right to sue in equity was maintained on the ground of avoiding a multiplicity of actions; also, on the ground that the suit was one to redress a fraud and breaches of trust; and, generally, because the remedy at law was inadequate. The doctrine is well settled in the federal courts that, in those cases where the right of a court of equity to afford redress for wrongful acts depends upon the inadequacy of the legal remedy, courts of equity may exercise jurisdiction unless the legal remedy is as plain, practical, and efficient to the ends of justice and its prompt administration as the remedy in equity. In determining whether a suitor should be permitted to sue in equity, the federal courts have always attached much importance to the fact that the remedy in the latter forum, as compared with the remedy at law, will save time and expense and a multiplicity of suits, and settle finally the rights of all concerned in one litigation. *Cockrill v. Cooper et al.*, 86 Fed. 7; *Boyce Exrs. v. Grundy*, 3 Pet. 210; *Oelrich v. Spain*, 15 Wall. 211; *Preteca v. Land Co.*, 50 Fed. 674.

If the foregoing principles are applied to the case at bar,

we think it may be safely asserted that the receiver is entitled to invoke the remedial powers and processes of a court of equity to redress the wrongs of which he complains.

All the other errors assigned by counsel for plaintiffs in error hinge upon the ruling of the court upon the foregoing, except the assignment that the judgment is not supported by the evidence. We have examined the record very carefully, and are of the opinion that there was sufficient competent evidence introduced at the trial to support the finding of the court below.

The judgment of the court below is affirmed.

All the Justices concur.