# Hundley v. Hewitt.

## Bill to Subject Unpaid Subscriptions to Debts of Corporation.

(Decided January 13, 1916. Rehearing denied March 23, 1916. 71 South. 419.)

1. **Corporations; Stockholders; Liability.**—Where a corporation became insolvent, was dissolved, and a receiver appointed, such receiver might maintain a bill against a stockholder for unpaid subscriptions for the benefit of the creditors of the corporation, although such creditors had not obtained a judgment, and execution thereon been returned no property found; the insolvency and dissolution of the corporation obviating the necessity for such action. (Sections 3509 and 3744, Code 1907, considered.)

2. **Same; Receivers; Unpaid Subscriptions.**—Where a corporation became insolvent, was dissolved and a receiver was appointed, a court of equity, having general jurisdiction to collect all corporate assets, may authorize the receiver to sue to enforce unpaid stock subscriptions due the corporation, though the corporation had, by resolution of the stockholders, canceled the subscription, as such order of cancellation was one that might be impeached by creditors.

3. **Same; Subscription Contracts; Liability.**—Where it is alleged, on a bill filed to enforce liability on a contract for subscription to the stock of a

corporation, that the corporation was insolvent, that its debts exceeded the amount due on such contracts, the bill is not demurrable for the reason that any surplus would be distributed to the shareholders, although it also alleges that the contract was cancelled, or the respondent released from liability on the contract by a majority of the shareholders.  •

APPEAL from Jefferson Chancery Court.

Heard before Hon. A. H. BENNERS.

Bill by R. G. Hewitt, as receiver of a dissolved and insolvent corporation, against Oscar R. Hundley, to enforce an unpaid stock subscription. From a decree overruling demurrer to the bill, respondent appeals. Affirmed.

The fifth and eighth paragraphs of the bill sufficiently appear. The third paragraph sets up the declaration of dissolution of the corporation, and the appointment of Hewitt as receiver. The sixth paragraph sets up the subscribing by Hundley in its original articles of incorporation for 140 shares of the capital stock of the par value of $100, the payment of $1,000 thereon, and that he owes a balance of $13,000. The seventh paragraph sets out the declaration of incorporation filed in the office of the judge of probate, showing the subscription for certain shares of stock, all of said stock subscription being payable in money, or its equivalent in commercial paper upon the approval of the board of directors, and this shows O. R. Hundley 140 shares. The affidavit of the person designated to receive the subscription shows that all the capital stock was paid in in cash, except $1,000, as paid by Hundley in cash, and his commercial paper for the balance taken and approved by the stockholders. Paragraph 8 sets up, in addition to what is set up in the bill; that Hundley executed his negotiable note in the sum of $13,000, payable to said company, and then sets up that at an irregular meeting of the stockholders on May 8, 1914, said Hundley fraudulently procured or caused a motion to be made and carried, ordering said insurance company to cancel said note of Hundley, and to return the same to him, and that knowing the whole matter was irregular and out of order Hundley had the motion spread upon the minutes of the company, well knowing that the consideration for which the note had been given had not proved ineffective, but that the said 130 shares of stock for which said note was given were issued to said Hundley, and that he kept said stock many months in his possession, but if mistaken in that, then it is charged that it was always subject to the demand

of said Hundley. A similar action at a later meeting of the stockholders is set up, wherein the note was cancelled and discharged. It is charged on information and belief that this last motion was made by the wife of Hundley, Mrs. Bossie O'Brien Hundley, the holder of 5 shares, and that Hundley and his wife voted their shares in favor of said resolution, and that the other holders of shares either refused to vote for the adoption of this resolution or voted against its adoption, and that at the time the resolution was adopted, there were 96 shares outstanding, and that only 15 shares voted for the resolution, and that exclusive of the vote of Hundley and his wife, less than the holders of 36 shares of the capital stock voted for the adoption of said resolution, thus showing that it was not adopted by a majority of the stockholders.

C. C. NESMITH, and LUKE P. HUNT, for appellant. BEDDOW & OBERDORFER, for appellee.

GARDNER, J.—The bill in this case is filed by the appellee as receiver for the Sun Life Insurance Company of America, for the purpose of subjecting the unpaid subscription of appellant, a stockholder in said insurance company, to the payment of debts due by said company. The bill shows the organization of the Sun Life Insurance Company of America as an Alabama corporation on October 4, 1913, and its dissolution by a decree of the city court of Birmingham on December 22, 1914, in a suit wherein the state of Alabama, upon the relation of the Attorney General, was complainant and said corporation was respondent. In that cause it was adjudged that the said insurance company had forfeited its right to do business, that it was an insolvent corporation, that its property and assets constituted a trust fund for the payment of its creditors, and that the said corporation be dissolved; and it was further decreed that R. G. Hewitt be appointed receiver of the said company and be authorized and directed to take charge of all its assets and proceed to collect, by suit or otherwise, all claims and indebtedness, and especially all unpaid subscriptions.—Code 1907, § 45524.

In the fifth paragraph of the bill it is averred that said insurance company is insolvent and has not property and assets sufficient to pay its creditors; the discrepancy between its assets and its liabilities being the sum of $20,000. It is further alleged

that the respondent, Hundley, subscribed in the original articles of incorporation for 140 shares of the capital stock of the said insurance company of the par value of $100 a share, paying therefor $1,000, and that he owes for the balance of said stock the sum of $13,000. The bill further shows that for the balance due the respondent executed his note, payable to said insurance company, in the sum of $13,000, bearing date of October 2, 1913, and the affidavit of two persons authorized by the incorporators of said insurance company to receive payment for subscriptions to the capital stock—a copy of which is made a part of the bill —shows that said note was approved by the stockholders and accepted as the equivalent of cash. It is further alleged that the said note has not been paid, and that respondent, with full knowledge that the said insurance company was financially involved and losing money, and that the value of its stock was depreciating, fraudulently and in violation of the rights of the stockholders and policyholders procured the passage of a resolution, at an irregular meeting of the stockholders on May 8, 1914, authorizing the cancellation of the said note and its return to the respondent; and that he still retains the same or has destroyed it.

A summary of the other averments of the bill, charging fraud in the said note, will appear in the report of the case. The eighth paragraph of the bill shows that the 130 shares of stock for which the note was given were either delivered to said respondent or were always subject to his demand. In the concluding paragraph of the bill it appears that the respondent was the president of said insurance company up to within a month ot its dissolution, and that he organized the company and had dominated its affairs up to that time.

(1) Under the provisions of section 3509 of the Code the assets of insolvent corporations constitute a trust fund for the payment of creditors, which sum may be marshaled and administered in a court of equity; and under section 3744 of the Code it is provided that a judgment creditor of a corporation with execution returned 'no property found' may, by a bill in equity, subject to the payment of his judgment the unpaid subscription of one or more stockholders, without regard to whether or not the corporation has called for such subscription or could maintain suit therefor against the stockholder.

The bill in this case shows no judgment against the corporation, but alleges its insolvency and its dissolution by a court of competent jurisdiction in conformity with the statute. The following quotation from *Drennen v. Jenkins,* 180 Ala. 261, 60 South. 856, is therefore applicable here: "While section 3744 of the Code of 1907 only authorized a judgment creditor of a corporation, having an execution returned 'no property found,' to file a bill in equity to subject to the payment of his judgment the unpaid subscriptions of one or more stockholders, without joining the other stockholders, * * * or could maintain a suit therefor against the stockholders, yet the averments of the bill in this case relieve the complainant from the necessity of complying with the provisions of this section before filing the bill; or, in other words (as was held in the case of *Dickinson v. Traphagan,* 147 Ala. 442, 41 South. 272), they showed this section was not applicable, because it would be impracticable to get judgments. The averment of this case brings the bill within the protection of the rule declared by this court in *McDonnell v. Insurance Co.,* 85 Ala. 401 [5 South. 120]; *Spence v. Shapard,* 57 Ala. 598, which cases are referred to in the *Dickinson Case, supra.* In *Spence v. Shapard,* it is said, referring to the New York decision only, 'that when a corporation is dissolved, the liability of stockholders to the creditors became primary and absolute; that it was not then necessary to first sue the corporation, or to aver or prove its insolvency.' * * * It was said in the case of *Dickinson v. Traphagan, supra,* that if the corporation had been dissolved, the creditor could not get judgment on a service in a court of law, and therefore his only remedy is by a bill in equity. The bill in this case avers that the corporation had in effect been dissolved, and that therefore his only remedy would be by a bill in equity."

So, also, is the following excerpt from the more recent case of *Pankey v. Lippman,* 187 Ala. 204, 65 South. 773: "As to the second phase of the bill, namely, wherein it is sought to enhance the assets of a dissolved corporation by compelling payment of unpaid subscriptions for stock, the authority of *Drennen v. Jenkins,* 180 Ala. 261, 60 South. 856, concludes against the appellant's contention that a judgment at law is a condition precedent to the equity of a creditor's bill to exact of stockholders the satisfaction of their liability on unpaid subscriptions for capital

stock. The status of a trust established by the statute * * * brings into play the general doctrines and practices of equity in the administration of a trust brought within its jurisdiction, and to justify—indeed, to require—the full exercise of its powers to the end that complete adjustment and relief may be made and awarded. Equity's customary thoroughness so requires."

In *Glenn v. Semple*, 80 Ala. 159, 60 Am. Rep. 92, it is said: "It is now * * * well settled that courts of equity may enforce the payment of stock subscriptions, where the directors have neglected or refused to make assessments and calls for them in the exercise of their proper fiduciary duty."

See, also, in this connection, *Hall & Farley v. Ala. Co.*, 143 Ala. 464, 39 South. 285, 2 L. R. A. (N. S.) 130, 5 Ann. Cas. 363; *Sherrill v. Hutson*, 187 Ala. 189, 65 South. 538; *Pickering v. Townsend*, 118 Ala. 351, 23 South. 703; *Sanger v. Upton*, 91 U. S. 56, 23 L. Ed. 220; *Dill v. Ebey*, 27 Okl. 584, 112 Pac. 973, 46 L. R. A. (N. S,) 440, and note; *Hall & Farley v. Ala. T. Co.*, 173 Ala. 398, 56 South. 235.

An examination of the authorities therefore discloses that the general equity of the bill is well settled and need not be rested upon the theory of a fraudulent transfer of the chose in action. The averments of the bill in regard to the cancellation and surrender of the respondent's note seem to have been thrown in by way of anticipation of the defense, and for the purpose of showing that there had been in fact no bona fide settlement or discharge of said obligation. While these averments might disclose a greater necessity for resort to a court of equity, yet they are not essential to the equity of the bill, as above stated. As said by the court in *Hall & Farley v. Ala. T. Co.*, *supra*: "After extended and mature consideration of the question we * * * now hold that fraud in the transfer or in the withholding of the amounts from the creditors is not necessary to equity jurisdiction in cases like this."

(2) It is strenuously insisted by counsel for appellant that the bill shows that by resolution of the stockholders the respondent was released from said obligation, and that, therefore, this is binding upon the corporation, and that the question of liability could be raised only by a creditor of the corporation; and the insistence is that the present action could be prosecuted only by the creditors. They then argue that the complainant in this

cause is but a statutory receiver, without express authority to institute this character of suit, and that as such he represents only the corporation itself, and perhaps its stockholders, but not its creditors, and that therefore he is without authority to maintain this bill. The case of *Republic L. I. Co. v. Swigert,* from the Supreme Court of Illinois, reported in 135 Ill. 150, 25 N. E. 680, 12 L. R. A. 328, relied on by counsel for appellant, lends support to their argument; but we are unwilling to follow it. The decision was not by the full court, one of the Associate Justices taking no part and the Chief Justice dissenting. The power to maintain a suit of this character need not be expressly conferred by statute upon the receiver, but if it can be fairly implied, either from the general scope and purpose of the statute or as an incident to a power expressly given, there is sufficient warrant for its exercise.—High on Receivers, § 322.

See, also, section 324, and note, for numerous instances of suits of this character brought by receivers; also note to *Dill v. Ebey, supra,* 46 L. R. A. (N. S.) 452; *Cole v. Satsop R. Co.,* 9 Wash. 487, 37 Pac. 700, 43 Am. St. Rep. 858; 34 Cyc. 390; *Merchants' Nat. Bk., Chicago, v. N. W. Mfg. Co.,* 48 Minn. 361, 51 N. W. 119; *Hightower v. Thornton,* 8 Ga. 486, 52 Am. Dec. 412; *Stillman v. Dougherty,* 44 Md. 380.

The Sun Life Insurance Company of America was dissolved and the complainant in this cause appointed receiver therefor by the city court of Birmingham, a court exercising equity jurisdiction, in conformity with the provisions of section 4552 of the Code of 1907. That section provides, among other things, that: Such court "may make all orders and decrees needful in the premises, and may appoint agents or receivers to take possession of the property and effects of the company, and to settle its affairs, subject to such rules and orders as the court may from time to time prescribe according to the course of proceedings in equity."

The receiver is appointed not only for the purpose of taking possession of the property, but to settle its affairs under the rules and orders of the court from which he receives his appointment, and the statute clearly shows that the court is vested with full power and jurisdiction over the subject-matter for the purpose of winding up the affairs of the dissolved corporation.

In the case of *Montgomery Bank & Trust Co. v. Walker,* 181 Ala. 368, 61 South. 951, the first assignment of demurrer to the

[Hundley v. Hewitt.]

bill challenged the right and authority of the superintendent of banks to maintain the bill in that case. There was no express authority in the statute, under which the superintendent of banks was proceeding, for him to maintain a suit of the character there involved, yet he was authorized to collect all debts and claims belonging to the bank and "to do such acts as are necessary to conserve its assets and business." This court in that case found no difficulty in holding that the superintendent of banks had authority to maintain suit. So here, a receiver is appointed by a court having full jurisdiction, and in conformity with the statute, which directs the court to make all orders and decrees needful in the premises and appoint receivers to take possession of the property and to settle its affairs under the orders of said court.

The statute clearly looks to a final settlement of the affairs of the corporation, and certainly its affairs could not be settled until its debts are collected. In *Cartwright v. West*, 173 Ala. 202, 55 South. 918, this court, speaking of the rights and duties of a trustee in bankurptcy, said: "The trustee in bankruptcy in a sense is a representative of both the bankrupt and the creditors. As such he succeeds in right and title to the bankrupt's estate for the benefit of his creditors. He may, as a general rule, maintain all actions, both at law and in equity, for the recovery and preservation of the assets, both real and personal, of the bankrupt's estate that the bankrupt himself, but for the bankruptcy, could have maintained. Even more, he may maintain an action the bankrupt could not, where, as in the present case, he seeks to avoid conveyances made by the bankrupt in fraud of his creditors. In this latter instance it cannot be said that the trustee is a representative of the bankrupt, for he [the bankrupt] could not mainain such a bill, nor in any legal or equitable proceeding become a beneficiary of his own fraudulent act."

We are of the opinion that the receiver appointed in this case, acting under orders of the court appointing him—a court of competent jurisdiction, with full power to settle the affairs of a dissolved corporation—has rights and duties of a kindred character to those of a trustee in bankruptcy so far as the question here concerned is involved, and that the above-quoted language is applicable to the receiver in this cause. We are therefore clearly of the opinion that the suit is properly brought by this receiv-

er. There is nothing in *Drennen v. Jenkins, supra,* at all in conflict with the conclusion we have here reached. In that case it was merely held that in the absence of a suit by the receiver the creditors could maintain the bill; and the opinion shows expressly that the receiver interposed no objection to the maintenance of the bill, but on the contrary that his counsel joined with the attorneys of the creditors and insisted upon the right of the creditors to maintain suit. It was expressly stated in the opinion as follows: "We do not hold, in this case, that the receiver of the corporation could not maintain a bill to subject the assets of the corporation sought to be subjected by the creditors in this bill."

We have treated the important questions presented by this appeal and argued by counsel for appellant, and our conclusion is that the decree of the chancellor overruling the demurrer is correct, and the same is here accordingly affirmed.

Affirmed.

ANDERSON, C. J., and MCCLELLAN and SAYRE, JJ., concur.

### ON APPLICATION FOR REHEARING.

GARDNER, J.— (3) It is earnestly insisted by counsel for appellant upon this application for rehearing that the bill is demurrable for that it shows a release of appellee from liability by a majority of the stockholders, who, under the averments of the bill, might share in the proceeds of any surplus funds.

As appears from the opinion rendered in this cause, we have treated the bill as one filed for the benefit of the creditors, and, so considered, we are still of the opinion that it is free from any defect pointed out by the demurrer.

The demurrer is addressed to the bill as a whole. The bill clearly alleges the insolvency of the company and shows a judicial ascertainment of such insolvency and a decree of dissolution of the corporation. In addition to this, it is further averred that: "Said insurance company is insolvent and has not property and assets sufficient to pay its creditors, the discrepancy between its assets and its liabilities being the sum of $20,000."

Under the averments of the bill, therefore, here confessed by demurrer, there is no occasion to enter into a discussion of the insistence here urged. Should there result, contrary to the averments of the bill, any surplus fund for distribution to the

stockholders, there would then be presented ample opportunity for the questions argued to be determined. As the bill is framed, as construed by us, it is a creditor's bill and one in which the stockholders as such are without interest.

As to the right of the complainant as receiver to maintain this suit, we are content with what was said in the original opinion in this cause.

The application is overruled.